Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 185 | **DATE** | 8/7/2001 |
| **CASE TITLE** | Elizabeth Snyder-Stulginskis, et al vs. United Air Lines, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion to remand (Doc. No 7) is granted and costs are awarded to Plaintiffs. Defendant's motion to strike (Doc. No. 9) is denied. The case is remanded to the Circuit Court of Cook County.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 0 8 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | FILED FOR DOCKETING 01 AUG -7 PM 4:54 | docketing deputy initials 8/7/2001 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH SNYDER-STULGINSKIS, as Personal Representative of the Estate of Diane Lee Snyder de Rizzi, deceased, *et al.*, | ) ) ) ) ) ) | AUG 0 8 2001 |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 01 C 185 |
| UNITED AIR LINES, INC., a corporation, | ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action arises out of the August 31, 1999 crash of a Lineas Aereas Privadas Argentina ("LAPA") Boeing 737-200 aircraft in Buenos Aires, Argentina. Plaintiffs, representatives of ten decedents and two survivors of the crash, brought this action in state court against Defendant United Air Lines, Inc., alleging that Defendant negligently trained LAPA pilots and that this negligent training was the proximate cause of the accident. Defendant subsequently removed the action to the Northern District of Illinois. Now before the court is Plaintiffs' motion to remand for lack of jurisdiction. For the reasons set forth below, Plaintiffs' motion is granted.

## FACTUAL BACKGROUND

On August 31, 1999, LAPA Flight 3142 departed from Buenos Aires, Argentina bound for Córdoba, Argentina. (Complaint ¶ 6.) Tragically, the plane crashed during an aborted take off, killing a number of the passengers and seriously injuring others.



(*Id.* ¶ 7.) On December 6, 2000, Plaintiffs filed the instant action in the Circuit Court of Cook County against Defendant, seeking compensation for the alleged wrongful deaths of the ten decedents and the personal injuries suffered by the two surviving Plaintiffs. (*Id.* ¶¶ 8-9.) In their complaint, Plaintiffs allege that Defendant "undertook a duty to, and did train flight crew members of [LAPA], including two pilots [Gustavo Weigel and Luis Escheverry] who were in control of Flight 3142." (*Id.* ¶ 3.) According to Plaintiffs, Defendant's negligence in training these individuals caused the crash and Plaintiffs' injuries. (*Id.* ¶ 5.)

On January 10, 2001, Defendant removed the action to the United States District Court for the Northern District of Illinois on the basis of federal question jurisdiction. Specifically, Defendant contends that because Plaintiffs' claims concern aviation safety, such claims are completely preempted by the Federal Aviation Act of 1958 ("FAA"), 49 U.S.C. App. §§ 1301 *et seq.* Defendant also contends that this action should be adjudicated in federal court because the training of the Argentinean pilots is governed by the Convention on International Civil Aviation, an international treaty signed by both the United States and Argentina. Plaintiffs seek remand, arguing that no federal question is presented on the face of their complaint. Because this court finds that the FAA does not completely preempt Plaintiffs' state law tort claims and that those claims are not governed by any United States treaty, Plaintiffs' motion to remand this matter to state court is granted.

## DISCUSSION[1]

### A. Removal Standard

Removal of actions from state court to federal court is governed by 28 U.S.C. § 1441, which provides, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant[s] . . . to the district court of the United States . . . ." 28 U.S.C. § 1441(a). The party seeking removal to federal court has the burden of establishing the jurisdiction of the district court. *See In the Matter of the Application of County Collector*, 96 F.3d 890, 895 (7th Cir. 1996). If, at any time before final judgment, "it appears that the district court lacks subject matter jurisdiction," the district court must remand the case to the state court from which it was removed. 28 U.S.C. § 1447(c).

Where, as here, there is no jurisdiction based on complete diversity, federal jurisdiction must be based on the existence of a federal question. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Empress River Casino Corp. v. Local Unions No. 9 and 176*, No. 94 C 2379, 1994 WL 262075, at * 1 (N.D. Ill. June 10, 1994). Federal question jurisdiction exists "when the case aris[es] under the Constitution, laws or treaties of the United States." 28 U.S.C. §1331.

---

[1] Defendant has moved to strike Plaintiffs' motion to remand, citing Local Rule 7.1, which requires that briefs in support of motions not exceed 15 pages without prior approval of the court. Because this court granted Plaintiffs leave to file a memorandum in excess of 15 pages on March 15, 2001, Defendant's motion to strike (Doc. No. 9) is denied as moot.

Under the "well-pleaded complaint rule," a case arises "under the Constitution, laws, or treaties of the United States," only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar*, 482 U.S. at 392; *Corporate Travel Consultants, Inc. v. United Airlines, Inc.*, 799 F. Supp. 58, 60 (N.D. Ill. 1992). Under this rule, a case may not be removed to federal court on the basis of a federal defense to a state law cause of action, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. *Caterpillar*, 482 U.S. at 392-3 (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 12 (1983); *Lehmann v. Brown*, 230 F.3d 916, 919 (7th Cir. 2000). Additionally, because the plaintiff is "master of her complaint," she may plead whatever causes of action she chooses and can generally avoid federal jurisdiction by pleading state claims rather than federal claims, even where a federal defense may later be raised. *Bastien v. AT&T Wireless Serv.*, 205 F.3d 983, 986 (7th Cir. 2000)(citing *Franchise Tax Bd.*, 463 U.S. at 10); *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914).

**B.    Complete Preemption**

The Supreme Court has, however, recognized an exception to the well-pleaded complaint rule: the doctrine of complete preemption.[2] *Caterpillar*, 482 U.S. at 392;

---

[2]     Additionally, some courts have recognized the artful pleading doctrine as a second exception to the well-pleaded complaint rule. Under the artful pleading doctrine, a plaintiff may not defeat removal by failing to plead federal questions necessary to recovery or facts that would indicate federal jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 22; *Empress River Casino Corp.*, 1994 WL 262075, at *3 (*citing Burda*
(continued...)

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Schuman v. CITGO Petroleum Corp.*, No. 99 C 4805, 2000 WL 528527, at *4-5 (N.D. Ill. Apr. 24, 2000). Under this doctrine, if Congress intended that a federal statute would "completely preempt" an area of state law, any complaint alleging claims under that area of state law is presumed to allege a claim arising under federal law. *See Metropolitan Life Ins. Co.*, 481 U.S. at 63-64. The complaint may thus be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding that the plaintiff's complaint on its face alleges only a state-law cause of action. *Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983, 986 (7th Cir. 2000). In order for complete preemption to apply, however, the preemptive force of the federal statute must be so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co.*, 481 U.S. at 65; *Corporate Travel Consultants, Inc.*, 799 F. Supp. at 60. Additionally, the Supreme Court has expressed a reluctance to find complete preemption and has, to

---

²(...continued)
*v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992)); *Oglesby v. RCA Corp.*, 752 F.2d 272, 278 (7th Cir. 1985). Other courts merely recognize complete preemption as one form of artful pleading. *Compare Merkel v. Federal Express Corp.*, 886 F. Supp. 561, 565 (N.D. Miss. 1995)(recognizing artful pleading as a second exception), *with Empress River Casino Corp.*, 1994 WL 262075, at *4 (the artful pleading doctrine cannot apply, by its very nature, to a claim in an area that is not completely preempted); *Corporate Travel Consultants, Inc.*, 799 F. Supp. at 60 (same). Because Defendant does not argue that the artful pleading doctrine applies to the instant case, the court need not address the doctrine here.

date, applied the doctrine only in cases implicating § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and § 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq. Corporate Travel Consultants, Inc.*, 799 F. Supp. at 60; *Schuman v. CITGO Petroleum Corp.*, No. 99 C 4805, 2000 WL 528527, at *5 (N.D. Ill. Apr. 24, 2000).

In order to determine whether a defendant has met its burden of proving that complete preemption applies to a plaintiff's state law claims, courts have developed a two-pronged test. Under the first prong, the court must determine whether the plaintiff's state law claims are preempted, or replaced, by federal law. *Corporate Travel Consultants, Inc.*, 799 F. Supp. at 61 (citing *Metropolitan Life Ins. Co.*, 481 U.S. at 66); *In re Air Disaster*, 819 F. Supp. 1352, 1358 (E.D. Mich. 1993). The second prong of the test requires a determination of whether there is language in the statute or the legislative history from which to conclude that Congress intended to make the plaintiff's cause of action removable to federal court. *Id.* The court concludes Defendant has not met its burden under either of the two prongs.

### 1. First Prong: FAA Does Not Completely Preempt Plaintiffs' Claims

In the instant case, Plaintiffs' complaint alleges only a state common law action for negligence. Specifically, Plaintiffs allege that Defendant negligently trained the LAPA flight crews and that this negligent training was the proximate cause of the crash and resulting injuries to Plaintiffs. Defendant contends, however, that "[r]egulation of the training of pilots and even the instruments upon which they are

trained is governed exclusively by the FAA and the Federal Aviation Regulations (FARs) promulgated thereunder," and, therefore, that Plaintiffs' complaint actually arises under and is completely preempted by the FAA. United Air Lines, Inc's Motion to Strike And Response to Plaintiffs' Motion to Remand (hereinafter "Def.'s Memo"), at 6.

This court cannot agree. Other courts which have taken a close look at this issue have found that Congress neither expressly nor impliedly preempted state law personal injury claims by the FAA. For example, in *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1440 (10th Cir. 1993), plaintiff, who was injured when the airplane he was piloting crashed, brought suit against the airplane manufacturer, claiming that the negligent design of the plane was the proximate cause of his injuries. Defendant argued that plaintiff's claim was preempted by the Federal Aviation Act of 1958 and its corresponding regulations. *Id.* at 1441.[3] Defendant Piper urged that the FAA impliedly preempted state tort actions by occupying the field of airplane safety. *Id.* at 1441.

The Tenth Circuit disagreed, holding instead that the plain language of the Federal Aviation Act suggested that Congress intended that the Act have no general preemptive effect. *Id.* at 1442. In making this decision, the court noted first that "the Federal Aviation Act contains no express preemption provision governing safety." *Id.* at 1443, 1447. The court noted next that the presence of the savings clause in the FAA

---

[3] This case did not involve removal jurisdiction, but, rather, addressed only the issue of whether Defendant could argue the defense of preemption.

"shows that Congress did not intend to occupy the field of airplane safety to the exclusion of the state common law." *Id.* at 1442. That clause provides, in relevant part:

> Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies.

*Id.* at 1442 (citing 49 U.S.C. App. §1506). The court explained that "Congress may reserve for the federal government the exclusive right to regulate safety in a given field, yet permit the states to maintain tort remedies covering much the same territory" and explained that the savings clause "by its very words . . . leaves in place remedies then existing at common law or by statute," thereby showing that Congress did not intend to occupy the field of airplane safety. *Id.* at 1441-1443. Thus, the savings clause demonstrates that "Congress has intended to allow state common law to stand side by side with the system of federal regulations it has developed." *Id.* at 1444.

The Seventh Circuit interpreted the FAA savings clause in the same manner in *Bieneman v. City of Chicago*, 864 F. 2d 463, 471-72 (7th Cir. 1988). In *Bieneman*, plaintiff brought a multi-count suit against the City of Chicago, contending that the City, which operates O'Hare airport, and the airlines using the airport, intentionally reduced the value of his land by "propagating noise and the chemicals in aircraft exhaust." *Id.* at 464. After determining that the district court properly resolved the federal counts adversely to plaintiff, the Seventh Circuit turned to the remaining state law counts to determine whether the district court should have considered those counts

after all the federal questions were resolved. *Id.* at 470. Pointing out that such claims may be decided in federal court even after the federal questions are disposed of if there is "a federal defense to the state claims [that is] appropriately resolved by a federal court," the court went on to find that such a defense did not exist because the FAA did not expressly preempt state damage remedies. *Id.* As the court explained, the savings clause found in the FAA is proof that the FAA did not preempt state damage remedies. *Id.* at 471.

Similarly, in *Castellanos v. U.S. Long Distance Corp.*, 928 F. Supp. 753, 755 (N.D. Ill. 1996), plaintiff brought a four-count action in state court against long distance carriers, alleging that the companies were changing consumers' long distance telephone carriers without the consent of those consumers. Defendant removed the case from state court, arguing that Congress intended that pre-subscription of telephones for interstate calling be governed exclusively by the Federal Communications Act ("FCA"), 47 U.S.C. § 414. *Id.* at 756. In granting plaintiff's motion to remand, the court found that the presence of a savings clause in the FCA, identical to that found in the FAA, demonstrates that Congress intended the FCA to supplement, and not to completely preempt, plaintiff's state law claims. *Id.* at 756.

Along with the savings clause, courts have considered the express preemption provision in the FAA as evidence that Congress meant only to preempt those claims detailed in that provision. Specifically, the FAA preempts "any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes,

or services of any air carrier." *Cleveland*, 985 F.2d at 1443, n.11 (citing 4 U.S.C. App. § 1305(a)(a)). Because that express preemption clause does not deal with safety, the Tenth Circuit in *Cleveland* applied the doctrine of *expressio unius est exclusio alterius* to reach its conclusion that state law personal injury actions were not impliedly preempted by the FAA. As the *Cleveland* court observed, "implied preemption is generally inapplicable to a federal statute that contains an express preemption provision." *Id.* at 1443.

Other cases in this district have also found that the FAA does not preempt state law claims for personal injuries. In *O'Hern v. Delta Airlines, Inc.*, 838 F. Supp. 1264, 1265 (N.D. Ill. 1993), plaintiff O'Hern brought a state law negligence claim against Delta Airlines for hearing loss he sustained during the plane's rapid ascension. Among other things, O'Hern claimed that Defendant's negligent operation of the aircraft and failure to properly train, educate, advise or supervise its agents was the direct and proximate result of his injuries. *Id.* Removal jurisdiction was not at issue in *O'Hern*, but it is nevertheless instructive concerning preemption. In *O'Hern*, defendant argued that § 1305 of the Federal Aviation Act preempted plaintiff's state law claims. *Id.* The court found that the FAA did not preempt plaintiff's state law action for personal injuries, explaining that there was no indication "that Congress intended to encompass airline safety" when it drafted § 1305 of the FAA. *Id.* at 1267.

Additionally, in a case very similar to this one, *In re Air Disaster*, 819 F. Supp. 1352, 1353-54 (E.D. Mich. 1993), survivors of one of the passengers of an airplane

crash brought suit against the pilot and Northwest Airlines in state court, alleging, *inter alia,* that the airline was negligent in failing to adequately train or instruct the crews of the planes and that this failure to train was a proximate result of the crash. *Id.* at 1354. Defendants removed the matter to federal court, claiming that the FAA preempted plaintiffs' claims. *Id.* at 1353. On plaintiffs' motion for remand, the court noted that the issue before it was not merely whether plaintiffs' claims were preempted under the FAA, but, rather, whether the FAA "is the type of federal act calling for application of the "*complete* preemption" doctrine. *Id.* In finding that it was not, the court relied on both the savings clause found in the FAA and the fact that no express preemption regulating claims of failure to train appear in the statute. *Id.* at 1358. The court noted, further, that, if Northwest's argument were correct, and such an action were preempted, "it would appear to follow that most, if not all, State law claims arising out of an air crash would be pre-empted," a result other courts had rejected. *Id.* at 1362. Finally, the court pointed out that plaintiff was not attempting to hold the defendant to a different standard of care than any prescribed by the FAA; thus, the fact that the FAA establishes extensive regulation of pilot training does not mandate a finding of preemption because there was no "conflict between state and federal law." *Id.* at 1361, 1363.

Similarly, in the case at hand, Plaintiffs allege only that Defendant's negligence in training the LAPA crew was a proximate cause of their injuries. Because the FAA does not expressly preempt such a claim and the savings clause of the FAA has been

- 11 -

found to preserve such claims, Plaintiffs' claim is not preempted. Further, because Plaintiffs do not seek to hold Defendant to a different standard of care than any found in the FAA, there is no conflict between state and federal law that would mandate preemption.

### 2. Second Prong: FAA Does Not Create Removal Jurisdiction

Even assuming *arguendo* that Plaintiffs' claims were preempted by the FAA, Defendant has not met its burden of establishing the second prong of the complete preemption test: that there exists in the FAA or its legislative history sufficient indication of Congress's intent to make Plaintiffs' cause of action removable to federal court. If there is no clear evidence of congressional intent to create removal jurisdiction through preemption, the case should be remanded to state court. *Merkel v. Federal Express Corp.*, 886 F. Supp. 561, 566 (N.D. Miss. 1995)(Airline Deregulation Act did not preempt plaintiff's state law action against Federal Express for damages that resulted when Federal Express lost Plaintiff's baseball card collection).

In *Corporate Travel Consultants, Inc. v. United Airlines, Inc.*, 799 F. Supp. 58, 61 (N.D. Ill. 1992), the district court found that the FAA preempted plaintiff's claim because it related to "rates," a subject that, as noted previously, is expressly preempted by the FAA. *Id.* at 61. Defendant was therefore able to establish the first prong of the complete preemption test. *Id.* The court found, however, that defendant had failed to establish the second prong of the complete preemption test because the FAA lacked "any jurisdictional language" that would evince congressional intent to make the cause

of action removable to federal court. *Id.* In making this decision, the court noted that the FAA contains no language similar to that of either ERISA or the LMRA, statutes where the Supreme Court has found such congressional intent to make a cause of action removable to federal court. *Id.* at 63.

In the instant case, similarly, Defendant has not pointed to any such jurisdictional language; indeed, Defendant has not addressed this prong of the test at all. The court concludes that Plaintiffs' claim is not completely preempted by the FAA.

## C.    International Treaty

Finally, Defendants argue that, even if the FAA does not completely preempt Plaintiffs' state law claim, such claims are governed by international treaty and, therefore, federal jurisdiction is proper in this case. Specifically, Defendants contend that the United States and Argentina, as signatories of the Convention on International Civil Aviation (the "Chicago Convention"), are bound by its provisions regarding pilot training, certification, and safety.

The court does not dispute that the United States is bound by this treaty, but it is not clear how this treaty governs the current case, nor has Defendant provided an adequate explanation of its significance here. Instead, Defendant merely asserts that the treaty governs and refers vaguely to Article IV of the Air Transport Services Agreement Between the Governments of the United States and Argentina, promulgated pursuant to the Chicago Convention, which provides that both signatories "recognize certificates of competency and licenses" issued by the other party, provided that the certificates or licences are at least equal to the minimum standards

established by the Chicago Convention. Def.'s Memo, at 13 (citing Air Transport Services Agreement, October 22, 1985, U.S.-Argentina, art. VI, 985 U.S.T. LEXIS 73).

In the case before this court, Plaintiffs have not challenged the validity of the pilots' licenses or certification; they merely allege that Defendant United was negligent in training those pilots. The court notes, further, that Section 4 of Article I of the Chicago Convention provides that the treaty would have full legal powers only where "compatible with the constitution and laws of the [country] concerned." Thus, it is not clear that the United States intended to preempt state law negligence claims by this treaty, nor is the court certain that this treaty must govern the case at hand. Indeed, Section 7 of the Chicago Convention provides that the "laws and regulations" of any country concerning a number of issues, including issues relating to the crew of the aircraft, "shall be complied with" while within the territory of the country. In this case, Plaintiffs were injured while in Argentina, not Illinois; nevertheless, this section suggests that the contracting countries did not expect that by signing this treaty, they were relinquishing their right to enforce their own laws and regulations relating to aircraft safety and pilot training. The treaty does not, therefore, provide a basis for conferring federal jurisdiction in this matter. If, on remand, the state court determines that this treaty has some relevance to this case, it is free to interpret the treaty itself.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand (Doc. No. 7) is granted and costs are awarded to Plaintiffs. Defendant's motion to strike (Doc. No. 9) is denied as moot.

ENTER:

Dated: August 7, 2001

REBECCA R. PALLMEYER
United States District Judge